UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
                                          :
NEVILLE WELLS,                            :
                        Petitioner,       :
                                          :   10 Civ. 1107 (DLC)
            -v-                           :
                                          :   OPINION AND ORDER
ADA PEREZ, Superintendent of Downstate    :
Correctional Facility,                    :
                        Respondent.       :
                                          :
-------------------------------------------X

APPEARANCES

For the petitioner:
Joseph M. Nursey
Office of the Appellate Defender
11 Park Place
Suite 1601
New York, NY 10007

For the respondent:
Patricia Jean Curran
New York County District Attorney's Office
1 Hogan Place
New York, NY 10013


DENISE COTE, District Judge:

     In his report ("Report"), Magistrate Judge James C. Francis
IV has recommended that this petition for a writ of habeas
corpus be granted.  The petitioner was drunk when he killed and
seriously injured passengers in a vehicle with which his car
collided.  In brief, the Report concluded that the petitioner
was entitled to benefit from a change in New York's depraved
indifference law which followed his trial and which requires the

1

People to offer sufficient evidence at trial that he had formed, from the perspective of the petitioner's own or subjective state of mind, the requisite mens rea at the very time of the accident.  Both the petitioner and the respondent have filed objections to the Report.  For the following reasons, the Report is adopted in part and the petition is denied.

BACKGROUND

I.   The Proceedings in New York State Court

   A.   The Collision and Trial

   Neville Wells drove through a red light on June 14, 2004, and struck a car in which Judith Gubernikoff and her father Robert Smith were riding.  Gubernikoff died and Smith suffered severe injuries.  Wells was drunk.  When tested two hours after the accident, his blood alcohol level was more than three times the legal limit.

   Wells was indicted.  He was charged with one count each of murder in the second degree, vehicular manslaughter in the second degree, assault in the first and second degree, and vehicular assault in the second degree.  Two of the counts were premised on a depraved indifference theory:  murder in the second degree and assault in the first degree.

2

Wells waived his right to a jury and was tried before Justice Richard Carruthers in New York State Supreme Court, New York County.  At the close of the State's case, defense counsel moved to dismiss the depraved indifference charges on the ground that "under no view of the evidence [did] the circumstances in this case evince a depraved indifference to human life."  He cited People v. Register, 60 N.Y.2d 270 (1983), the then-applicable standard for depraved indifference.  The trial judge reserved decision.

In his defense, the defendant attempted to introduce evidence of his chronic alcoholism.  The trial court excluded the evidence on the ground that New York law did not allow a defense of intoxication for crimes of recklessness.

At the conclusion of the trial, defense counsel renewed his motion that the State had "not proven circumstances evincing a depraved indifference to human life."  The trial court denied the motion and convicted Wells on all counts on May 19, 2005.  Wells was sentenced to concurrent indeterminate terms totaling seventeen years to life imprisonment.

B.   The Feingold Decision

In the meantime, a significant change was taking place in New York's law of depraved indifference murder.  A series of New York Court of Appeals decisions flagging this change culminated

3

in People v. Feingold, 7 N.Y.3d 288 (2006), which overruled its prior standard for depraved indifference murder.

Under the previous standard, articulated in Register, the New York Court of Appeals explained that depraved indifference murder was characterized by a reckless state of mind and "conduct which creates a grave risk of death to another person." 60 N.Y.2d at 276.  "[D]epraved indifference referred to objective circumstances surrounding the offenses committed," and these "objective circumstances," not mens rea, are what distinguished depraved indifference murder from manslaughter. Mannix v. Phillips, 619 F.3d 187, 198 (2d Cir. 2010).

On July 5, 2006, following Wells's conviction but before Wells filed his brief on appeal with the First Department, the New York Court of Appeals issued its opinion in Feingold.  The Court of Appeals found that "depraved indifference to human life is a culpable mental state," Feingold, 7 N.Y.3d at 294, and that New York courts should find defendants guilty of crimes requiring a showing of depraved indifference only if the defendant evinces "a willingness to act not because [he] intends harm, but because [he] simply doesn't care whether grievous harm results or not." Id. at 296 (citation omitted).  Depraved indifference was, therefore, no longer measured by reference to the objective circumstances of the offense.

4

The New York Court of Appeals has since acknowledged that
its jurisprudence in this area had "gradually and perceptibly
changed from an objectively determined degree-of-risk standard
(the Register formulation) to a mens rea" standard.  Policano v.
Herbert, 7 N.Y.3d 588, 602-03 (2006).  Nonetheless, it asserted
that it adhered to the Register formulation up until the
Feingold decision, which explicitly overruled the articulation
of the standard for second-degree murder in Register.  Policano,
7 N.Y.3d at 603.

    C.   The Petitioner's State Court Appeal

Wells appealed his conviction, arguing that the evidence
presented at trial was insufficient to support his conviction on
the depraved indifference charges and that those charges were
against the weight of the evidence, relying on the change in New
York state law articulated in Feingold.  He also argued that the
trial court erred in precluding expert testimony concerning his
chronic alcoholism and in finding that it could not take under
consideration evidence of his extreme intoxication to "negative"
the culpable mental state required for the depraved indifference
charges.

On June 26, 2008, the First Judicial Department of the
Appellate Division affirmed Wells's conviction.  People v.
Wells, 862 N.Y.S.2d 20 (1st Dep't 2008).  The Appellate Division

found, first, that the petitioner's objection to the evidence
referencing the Feingold standard had not been preserved for
appeal.  The panel went on to say that even if the objection was
not procedurally barred, the evidence at trial was sufficient
for conviction under either the Register or Feingold standard.
The Appellate Division also found that the trial court properly
excluded the testimony Wells wished to present about his chronic
alcoholism.  The New York Court of Appeals denied leave to
appeal on November 19, 2008.  People v. Wells, 11 N.Y.3d 858
(2008).  On November 25, 2008, the Court of Appeals
retroactively applied its decision in Feingold to all cases
pending on direct appeal "in which the defendant has adequately
challenged the sufficiency of the proof as to his depraved
indifference murder conviction."  People v. Jean-Baptiste, 11
N.Y.3d 539, 542 (2008).

II.  The Habeas Petition and Report

     Wells filed this petition on February 11, 2010.  The Report
was issued on December 8.  The parties objected to the Report on
February 23 and 25, 2011.  The respondent submitted a further
reply by letter on March 10.

     The Report began its analysis by observing that a defendant
may benefit from changes in the law that occur before his
conviction becomes final, and that a conviction becomes final

6

when his opportunity to petition for a writ of certiorari
expires, i.e., ninety days after the New York Court of Appeals
denies an application for leave to appeal.  In this case,
Wells's conviction became final on February 17, 2009.  As a
result, the Report concluded that Wells was entitled to benefit
from the Jean-Baptiste ruling in 2008 that gave retroactive
effect to the Feingold decision, so long as he adequately
preserved the issue raised in his habeas petition.

The Report further noted that, in the event that Wells is
entitled to the benefit of the Feingold decision, he is also
entitled to rely on a more recent decision by the New York Court
of Appeals clarifying precedent established by Feingold in the
context of an intoxicated defendant.  The New York Court of
Appeals in that case held that "[t]here is insufficient evidence
to support a conviction for depraved indifference assault.  The
trial evidence established only that defendant was extremely
intoxicated and did not establish that he acted with the
culpable mental state of depraved indifference."  People v.
Valencia, 14 N.Y.3d 927, 927-28 (2010) ("Valencia II").  Based
on this ruling, the Report concluded that the First Department's
holding in Wells, which affirmed the conviction for depraved
indifference crimes based on, in part, a finding of mens rea at
the moment the petitioner began to drink, is no longer good law.

7

Turning to the issue of whether Wells is entitled to rely on Feingold and Jean-Baptiste, the Report reviewed relevant precedent and acknowledged that the First Department's finding of procedural default was "within the firmly established and regularly followed precedent of New York courts under circumstances similar to the ones presented by the petitioner's case" and therefore constituted both an "adequate and an independent ground for its decision."  The Report nonetheless concluded that Wells's claim was not procedurally barred because "the legal basis" for the claim "was not reasonably available at the time of the trial," and because he will be prejudiced by a court's refusal to acknowledge the claim.

Having found that Wells was entitled to benefit from the change in the law embodied in Feingold and its clarifying progeny, including Valencia II, the Report concluded that the Appellate Division erred in affirming Wells's conviction.  While the Appellate Division had found that Wells's objection based on applying the law as enunciated in Feingold was procedurally barred, it had gone on to find, in the alternative, that even under that standard, the evidence presented at trial was sufficient to sustain his conviction.  In the view of the Report, the Appellate Division erred in assessing Wells's mental state at the time he embarked on a course of conduct that led to

8

him operating a car while inebriated, and not at the moment of the collision.  In reaching this conclusion, the Report relied heavily on Valencia II, which it described as holding that "evidence of a defendant's decision to begin drinking despite the knowledge that he plans to drive later in the evening is insufficient to support a conviction for a depraved indifference crime."  The Report also reviewed the trial evidence and concluded that if the correct legal standard had been applied, there was insufficient evidence of a culpable mental state at the time of the collision to support a conviction.

Finally, the Report denied petitioner's claim that the trial court erred in excluding his proffered psychiatric evidence of his chronic alcoholism.  The Report concluded that such evidence would not have shed light on whether Wells possessed the requisite culpability at the time of the collision.

In shaping the relief to which Wells was entitled, the Report noted that the significant change in the law articulated in Feingold deprived the prosecution of the opportunity to present evidence of Wells's mental state at the time of the collision.  Therefore, a retrial of Wells on the depraved indifference charges was appropriate.

DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  The court shall make a de novo determination of the portions of the report to which a party objects.  28 U.S.C. § 636(b)(1); see Finkel v. Romanowicz, 577 F.3d 79, 84 n.7 (2d Cir. 2009) (citation omitted).  Either the petitioner or the respondent objected to each of the sections of the Report.  Therefore, the entirety of the Report will be reviewed de novo.

I.   Procedural Bar to the Insufficiency of the Evidence Claim

The Report concludes that there is a procedural bar to federal habeas review of Wells's claim that the evidence was insufficient to support his conviction for the depraved indifference charges because the First Department had denied the claim on an adequate and independent state procedural ground. The Report, however, continued on to find that Wells had shown just cause and prejudice in order to overcome that procedural bar.  The petitioner objects to the first finding, claiming that his objection was not barred.  The respondent objects to the second finding, arguing that Wells has not presented just cause and prejudice or a miscarriage of justice to overcome the bar and allow for habeas review.

10

A.   Existence and Adequacy of the Procedural Bar

"Federal courts considering habeas corpus petitions are generally barred from reviewing the decisions of state courts insofar as those decisions are predicated on adequate and independent state procedural grounds." Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006).  "The preclusion of federal review applies only when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Id. (citation omitted).  Habeas review is foreclosed "even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (citation omitted). In order for a state procedural bar to be deemed "adequate," it must be "firmly established and regularly followed in consideration of the specific circumstances presented in a case." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation omitted).

1.   Contemporaneous Objection Rule

Under New York law, an issue is preserved for appeal when the appellant objected to the same issue during the trial.  N.Y. Crim. Proc. Law § 470.05(2).  The appellant's objection must be both timely and "specifically directed at the alleged error" to preserve that objection for appellate review. Bierenbaum v.

Graham, 607 F.3d 36, 57 (2d Cir. 2010) (citing People v. Gray,
86 N.Y.2d 10, 19 (1995)).  The Second Circuit has found this New
York procedural requirement, the contemporaneous objection rule,
to be "adequate under firmly established and regularly followed
state law."  Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007).

The Report agreed with the First Department's finding that
Wells's challenge to the sufficiency of the trial evidence was
unpreserved for review because he had failed to properly raise
it at trial.  While Wells's trial counsel twice moved to dismiss
the depraved indifference charges on the ground that the
evidence was insufficient to prove the objective circumstances
of depraved indifference, as required by the then-controlling
Register standard, he did not make the objection made here and
on his state appeal, that the evidence does not support a
subjective finding of the defendant's depraved indifference
mental state, as required under the Feingold standard.  This
Opinion adopts the Report's finding that this argument is
procedurally barred from federal habeas review.

Wells argues that his trial counsel did raise the same
objection at trial as he put forward on appeal and his petition.
Wells points out that his trial counsel "consistently argued"
that "his conduct did not demonstrate a depraved indifference to
human life."  The trial counsel also objected to the evidence

12

because it failed to show that Wells's "actions were so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others" or that Wells's conduct "approach[ed] the level of depraved conduct exhibited" in other drunk driving homicide cases.  Trial counsel argued that the prosecution had not proven the "critical element" of depravity because Wells's conduct was "more indica[tive] of intoxication than depravity."  As the Report noted, these quotations, in context, reveal that Wells's trial counsel was arguing that the objective circumstances of the offense pointed only to intoxication and did not show depraved indifference under the Register standard.  The trial objections did not include any mention of a lack of evidence supporting a culpable mindset of depraved indifference, which was the objection argued on appeal and in this petition.  Therefore, his trial counsel failed to preserve for appeal the argument that the First Department found to be procedurally barred.

The petitioner also argues that even if the objection at trial was not precisely the same as the one asserted on appeal and in this petition, his counsel at trial objected to the sufficiency of the evidence with the same level of specificity as has been found satisfactory to preserve an objection under the Feingold standard on appeal by the New York Court of Appeals

13

in other cases.  Therefore, he argued, the First Department applied the contemporaneous objection rule too strictly, so it was not an adequate basis upon which to deny his claim on appeal.  Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (One of the considerations in judging the adequacy of a procedural bar was whether "state case law indicated that compliance with the rule was demanded in the specific circumstances presented.").

Specifically, Wells cites three decisions in which, he argues, the Court of Appeals found an argument like the one his trial counsel made was sufficient to preserve for review a challenge to evidence on depraved indifference.  People v. Payne, 3 N.Y.3d 266 (2004); People v. Gonzalez, 1 N.Y.3d 464 (2004); People v. Sanchez, 98 N.Y.2d 373 (2002).  Each of the decisions petitioner cites is distinguishable, however, as they were decided before Feingold, and were therefore subject to the Register standard both at trial and on appeal.  The trial objections in at least two of these cases were specifically tailored to challenge whether the evidence demonstrated objective circumstances of depraved indifference rather than an intent to kill, and so preserved this particular Register objection for appeal.  Gonzalez, 1 N.Y.3d at 466; Sanchez, 98 N.Y.2d at 390.  In the third case, the objection was at least

14

specific enough to be clear that it questioned the sufficiency of the evidence as to depraved indifference under the objective Register standard.  Payne, 3 N.Y.3d at 278.  These cases, therefore, do not provide support for Wells's contention that a trial objection stating that the evidence could not support a finding of objective indicia of depraved indifference can preserve for appeal a challenge to the sufficiency of the evidence to support a subjective mens rea assessment of depraved indifference.  Therefore, Wells has failed to demonstrate that strict compliance with the preservation rule has been excused by the New York Court of Appeals in similar circumstances.  To the contrary, as the Report indicated, there are a number of cases in which objections to the sufficiency of evidence of depraved indifference under the Register standard have been found to not preserve an objection to evidence of depraved indifference under the Feingold standard.  See, e.g., People v. Zephirin, 849 N.Y.S.2d 438, 438 (2d Dep't 2008); People v. Bowman, 847 N.Y.S.2d 536, 540 (1st Dep't 2007).

Finally, Fernandez v. Smith, 558 F. Supp. 2d 480 (S.D.N.Y. 2008), does not support Wells's argument that his objection was preserved.  Feingold was decided after the First Department heard and decided the appeal of the defendant in Fernandez. Unsurprisingly, as the change in the standard had not yet

occurred, the defendant's objection at trial and the objection made on appeal was the same -- that the evidence did not support his conviction for depraved indifference murder under the Register standard. Id. at 491-93. Therefore, Fernandez correctly found that the defendant had successfully preserved this Register standard objection to the evidence for consideration on appeal, in a factual situation quite different from that in Wells's state court proceedings.[1]

### 2.   Confrontation of Issue by a Trial Court

Wells also argues that his objection to the evidence under the Feingold standard was not procedurally barred because the trial court specifically confronted and resolved this issue.[2]

---

[1]   Indeed, the objection made in Fernandez's habeas petition, concerning the sufficiency of the evidence under the Feingold standard, was different from the one found to be procedurally barred in Fernandez's state court proceedings.  In contrast, the objection in Wells's habeas petition is the same objection that the First Department found procedurally barred.

This Opinion need not examine the Fernandez court's decision to equate without explanation the objection made at trial and on appeal with the different one made in the habeas petition at issue in that case.  Fernandez, 558 F. Supp. 2d at 493.  Because of this factual distinction, Fernandez does not provide a persuasive argument for ignoring the independent and adequate procedural ground relied upon by the First Department in denying the same challenge that Wells presents here.

[2]   While Wells did not raise before the Magistrate Judge the argument that the trial court's discussion of the sufficiency of the evidence might have preserved the objection for appeal in his petition, the argument is not entirely novel as it was

The New York Court of Appeals has found that a trial court's specific confrontation of an issue can preserve it for review on appeal even if it is not clear that a party's trial objection was sufficiently specific.  See, e.g., Feingold, 7 N.Y.3d at 290.  Wells also cites to People v. Florestal, 860 N.Y.S.2d 86 (1st Dep't 2008), which found that an objection on appeal to a failure to charge a jury that depraved indifference murder followed the Feingold standard was preserved when the trial court specifically addressed the issue, even though defense counsel had never made a specific objection at trial.  Id. at 89.

Both cases cited by petitioner are easily distinguishable from his state court proceedings.  In Florestal, defense counsel had argued that the New York Court of Appeals's holding in People v. Suarez, 6 N.Y.3d 202 (2005) (and not Feingold) had overturned the Register standard and held that depraved indifference was a culpable mental state required to prove depraved indifference murder, and that the prosecution had therefore not carried its evidentiary burden at trial. Florestal, 860 N.Y.S.2d at 89.  The First Department reasoned

raised in Wells's application for leave to appeal filed with the New York Court of Appeals.  Therefore, without deciding if the argument is properly raised here, this Opinion will address its merit.

that this objection, although made in the context of argument
for the admission of certain expert testimony and for dismissal
and not in the context of an objection made to the jury charge,
adequately preserved such an objection because the trial court
specifically addressed the issue and rejected defense counsel's
position about the effect of Suarez. Id. The First Department
reasoned that the contemporaneous objection rule "does not
require litigants to make repeated pointless protests after the
court has made its position clear." Id. (citation omitted).

In Feingold, the defendant's trial counsel had made only a
general objection to the sufficiency of the evidence under the
Register standard at trial, similar to the one made by Wells's
trial counsel. But the Feingold trial court specifically
addressed the issue of defendant's mens rea, finding that even
though the "defendant was not depravedly indifferent," he was
still guilty of depraved indifference murder under the Register
standard. Feingold, 7 N.Y.3d at 295. Therefore, the New York
Court of Appeals found that defendant's objection as to the
proof of a depraved indifference mental state was preserved for
review. Id. at 290.

By contrast, Wells's trial court only discussed mens rea in
order to reiterate the Register standard and to note that
depraved indifference murder required a showing of recklessness,

18

for which intoxication was not a defense.  In context, it was
clear that the trial court was not addressing any argument made
by the parties, or raised by the court sua sponte, that the
prosecution might be required to prove depraved indifference as
a culpable mental state.  Unlike the Feingold trial court, in
rendering its decision, the trial court for Wells did not
suggest that it ever considered his mens rea under any standard
other than recklessness; all discussion of depraved indifference
was clearly made in reference to objective circumstances of the
offense.  The language used by the trial court did not
"expressly decide[]" the issue at the heart of Wells's petition,
and was insufficient as a matter of New York law to preserve the
objection for appeal.  Garvey, 485 F.3d at 717 (citation
omitted).  This Opinion therefore adopts that portion of the
Report finding that there was an independent and adequate state
procedural ground for denying petitioner's sufficiency of the
evidence claim, and this procedural ground bars federal habeas
review of that claim.

    B.   Overcoming the Procedural Bar

         1.   Just Cause

Although the Report found that Wells's sufficiency of the
evidence objection was procedurally barred, it went on to find
that Wells has demonstrated just cause and prejudice in order to

19

overcome that bar and permit federal habeas review.  This
Opinion does not adopt that section of the Report.

One way to overcome a procedural default on an unpreserved
claim is to "demonstrate cause for the default and actual
prejudice as a result of the alleged violation of federal law."
Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citation
omitted).  Just cause for a default can be found where "a
constitutional claim is so novel that its legal basis is not
reasonably available to counsel."  Reed v. Ross, 468 U.S. 1, 16
(1984).  "[F]utility cannot constitute cause if it means simply
that a claim was unacceptable to that particular court at that
particular time."  Rosario v. United States, 164 F.3d 729, 733
(2d Cir. 1998) (citation omitted).

The Report agreed with the petitioner that prior to
Feingold, an objection that the trial evidence did not support a
finding of a mental state of depraved indifference was not
available to defense counsel, including Wells's trial counsel.
Indeed, other district courts in this circuit have excused
procedural default due to the "drastic change" or "evolving
state of the law" occurring in New York at the time of Wells's
trial.  Petronio v. Walsh, 736 F. Supp. 2d 640, 657 (E.D.N.Y.
2010); Fernandez, 558 F. Supp. 2d at 493.

The New York Court of Appeals's holding in <u>Feingold</u>,
although the one to explicitly overturn <u>Register</u>, did not
represent a sudden shift that came without signal to litigants
in New York.  <u>See</u> <u>Policano</u>, 7 N.Y.3d at 602-03.  The Court of
Appeals, in answering a question certified to it by the Second
Circuit, explained that a series of decisions starting with
<u>People v. Hafeez</u>, 100 N.Y.2d 253 (2003), and including <u>People v.</u>
<u>Gonzalez</u>, 1 N.Y.3d 464 (2004) and <u>People v. Payne</u>, 3 N.Y.3d 266
(2004), which had been decided prior to Wells's trial,
"incrementally pointed the law in a different direction,"
towards the holding in <u>Feingold</u>.  <u>Policano</u>, 7 N.Y.3d at 595
(citation omitted).  New York's high court said that its
depraved indifference jurisprudence "gradually and perceptibly
changed from an objectively determined degree-of-risk standard
(the <u>Register</u> formulation) to a <u>mens rea</u>" standard.  <u>Id.</u> at 602-
03.  Even prior to <u>Hafeez</u>, Judge Rosenblatt's dissent in <u>People</u>
<u>v. Sanchez</u>, 98 N.Y.2d 373, 394-416 (2002), argued that the <u>mens</u>
<u>rea</u> requirement for depraved indifference murder should be
depraved indifference, not recklessness.  <u>Id.</u> at 398-400.  Judge
Rosenblatt's dissent included a detailed history of the
development of New York's depraved indifference jurisprudence
and provided a blueprint for the later majority decision in
<u>Feingold</u>.  <u>Id.</u>  Wells's trial counsel, therefore, had the

benefit of a steadily building argument for his objection in decisions from New York appellate courts.  The Petronio and Fernandez trials, in contrast, occurred before many of these cases were decided -- in the case of Petronio, the trial occurred before even Judge Rosenblatt's dissent in Sanchez -- and so for the defense counsel in those trials, the argument eventually accepted in Feingold might not yet have been available.

The appropriate mens rea for depraved indifference murder was also the subject of discussion in the legal media prior to Wells's trial, as was speculation that the Court of Appeals would likely overturn Register.  See, e.g., Abraham Abramovsky, People v. Payne: Another Nail in Register's Coffin, N.Y.L.J., Dec. 15, 2004 at 3; Abraham Abramovsky, Re-Evaluating Depraved Indifference Under New York Law, N.Y.L.J., June 24, 2003, at 3. Given the intensity of this debate, it is not surprising that some defense counsel defending their clients against second degree murder and manslaughter charges presented this objection at trials that took place before Feingold was decided.  See, e.g., Jean-Baptiste, 11 N.Y.3d at 544; People v. George, 11 N.Y.3d 848, 849 (2008).  That the objection "had been perceived by other defendants" is another indication that it was not so novel as to have been unavailable to Wells's trial counsel.

22

Roman v. Abrams, 822 F.2d 214, 223 (2d Cir. 1987) (citation
omitted).

Thus, Wells's objection in his petition to the sufficiency
of the evidence at his trial to support a mental state of
depraved indifference had been "percolating" in New York courts
and legal media for several years prior to his trial. Smith v.
Murray, 477 U.S. 527, 537 (1986).  The fact that Wells's trial
counsel might have thought that such an argument was unlikely to
be accepted by the court is not sufficient to provide just cause
for failure to raise it at trial.  Id. at 534-35.  It was
"reasonably available" to his trial counsel, thereby defeating
any argument that Wells has just cause to overcome the
procedural bar to federal habeas review of this claim.[3]

        2.   Fundamental Miscarriage of Justice

Wells argues, in the alternative, that he should be allowed
to overcome the procedural bar to federal habeas review of his
claim by "demonstrat[ing] that failure to consider the claim[]
will result in a fundamental miscarriage of justice." Green,

---

[3]    Because this Opinion finds that Wells does not have just
cause to overcome the procedural bar to review of his
sufficiency of the evidence claim, it need not address whether
the alleged violation of federal law he claims caused him
prejudice.  As noted below, however, Wells's claim has no merit.
Therefore, even if he had shown just cause for failing to
preserve his claim, he cannot demonstrate prejudice to overcome
the procedural bar.

414 F.3d at 294 (citation omitted).  This argument was not raised in Wells's petition, so it was not considered in the Report.  But even if this argument had been timely raised, it is unavailing.

In claiming that there was a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent," not merely that there was a legal insufficiency. Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003). Furthermore, to overcome a procedural default a claim of actual innocence "must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  House v. Bell, 547 U.S. 518, 536-37 (2006) (citation omitted).  Such a claim requires "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. at 537 (citation omitted).  Wells does not present any new evidence not considered at trial to be considered in evaluating his "actual innocence."[4]  Therefore, Wells cannot support his

---

[4]     Furthermore, contrary to Wells's argument, the Report's decision to grant Wells's petition is based only on an agreement with his legal insufficiency argument, not a determination that Wells is "factually innocent."

24

argument that his procedural bar should be overcome to avoid a
fundamental miscarriage of justice.

II.  Retroactivity of Feingold

       If the procedural bar to Wells's sufficiency of the
evidence objection were overcome, a recommendation in the Report
that this Opinion does not adopt, it would be necessary to
determine which standard for depraved indifference under New
York law applies to Wells's conviction in order to evaluate
whether or not the evidence was insufficient to support his
conviction.  The Report found that the revised elements of
depraved indifference murder articulated in Feingold, decided
after Wells's trial but before his direct appeal to the First
Department, applied to Wells's case.  The respondent objects to
this recommendation, arguing that the Report misapplies Jean-
Baptiste, the decision of the New York State Court of Appeals
which governs the retroactivity of Feingold in similar cases.
The petitioner did not object to this finding in the Report.

       "[T]he Constitution does not require a state's highest
court to make retroactive its new construction of [a criminal]
statute."  Henry v. Ricks, 578 F.3d 134, 140 (2d Cir. 2009)
(citation omitted).  "A state in defining the limits of
adherence to precedent may make a choice for itself between the
principle of forward operation and that of relation backward.

It may say that decisions of its highest court, though later
overruled, are law none the less for intermediate transactions."
Wainwright v. Stone, 414 U.S. 21, 24 (1973) (citation omitted).

        As a consequence, the Second Circuit certified questions to
the New York Court of Appeals to determine when and in which
cases the new standard in New York's depraved indifference
jurisprudence applies, Policano v. Herbert, 453 F.3d 75 (2d Cir.
2006), and then applied the answer supplied by the Court of
Appeals to habeas petitions before it in Policano v. Herbert,
507 F.3d 111 (2d Cir. 2007), and Henry v. Ricks, 578 F.3d 134
(2d Cir. 2009).  Federal courts have also looked to state law to
determine whether the new standard should apply to cases, like
Wells's, that were pending on direct appeal when Feingold was
decided.  E.g., Lampon v. Lavalley, No. 10 Civ. 2591(BMC), 2011
WL 684623, at *11 (E.D.N.Y. Feb. 16, 2011) (finding that the New
York Court of Appeals's decision in Jean-Baptiste determined the
retroactivity of the Feingold standard to cases pending on
direct appeal when Feingold was decided).  This Opinion will
also follow New York state case law in determining what standard
applied to Wells's conviction.

        The Report correctly acknowledged that state law, and
specifically the New York Court of Appeals's decision in Jean-
Baptiste determined whether the Feingold standard would apply to

26

Wells's conviction.  In Jean-Baptiste, the Court of Appeals held
that "the standard as articulated in Feingold should apply to
cases brought on direct appeal in which the defendant has
adequately challenged the sufficiency of the proof as to his
depraved indifference murder conviction."  Jean-Baptiste, 11
N.Y.3d 539 at 542.[5]  Trial counsel for Jean-Baptiste did, indeed,
make "a specific motion to dismiss for legal insufficiency at
trial, anticipating the change in the law brought by Feingold,"
so the standard articulated by Feingold applied to his case upon
appellate review.  Id. at 544.  The Court of Appeals
distinguished such a situation from one in which the defendant
had "failed to preserve his newly advanced theory because it
differed from the theory he advanced at trial," and thereby lost
the benefit of a change in the law.  Id.

     The Report, correctly applying Jean-Baptiste, found that
"the depraved indifference standard that applies to Mr. Wells's
claims on habeas review depends on whether he properly preserved
the objections he raises here.  If he did, then the proper
standard is the one announced in Feingold, if not, then Register

---

[5]     Wells's assertion in his objection to the Report that Jean-
Baptiste "held that Feingold applied retroactively to all cases
pending on direct appeal when Feingold was decided," therefore,
misrepresents that decision's holding by ignoring the additional
requirement that a defendant have made and preserved for appeal
an objection as to the sufficiency of the trial evidence.

27

applies." As discussed above, Wells's trial counsel did not adequately challenge the sufficiency of the trial evidence to support a mens rea of depraved indifference; had he done so, he would have "anticipated the change in the law brought by Feingold," and so preserved the objection he raised on appeal and again in this petition. Id. at 544. Therefore, under principles of New York law, Feingold does not apply retroactively to Wells's conviction.

Later in the Report, when Feingold is applied in the review of the merits of Wells's petition, the preservation requirement set out by Jean-Baptiste is not mentioned. The Report seems to have assumed that Wells's demonstration of just cause to overcome the procedural bar and allow federal habeas review of his claim -- a finding which is not adopted here, in any case -- would somehow nullify his failure to preserve his objection in state court, paving the way for Feingold to apply to his claim. There is no support for this assumption; the case law allowing petitioners to overcome procedural default for federal habeas review does not overrule a state's prerogative to determine the retroactivity of changes in its criminal law.

As Wells's trial counsel did not adequately preserve an objection to the sufficiency of the evidence, the Register standard, not the Feingold standard, applies to Wells's

28

conviction.  Therefore, this Opinion does not adopt the portion
of the Report that finds that Feingold applies regardless of
Wells's procedural default.

III. Merits of the Sufficiency of the Evidence Challenge

If Wells were able to overcome the procedural bar to his
sufficiency of the evidence claim, and if Feingold articulated
the standard applicable to his conviction -- two recommendations
that, again, this Opinion does not adopt -- it would next be
necessary to evaluate the merits of Wells's claim and determine
whether the evidence presented at his trial was sufficient to
support his depraved indifference convictions under the Feingold
standard.[6]  The Report made two findings as to the merits of
Wells's claim.  First, it found that Feingold had been clarified
by a later decision of the New York Court of Appeals, Valencia
II.  The Report argued that Valencia II states that a mens rea
of depraved indifference can only be supported by evidence of a
defendant's state of mind at the time of the offense, and any
evidence from a time before the moment of the offense is
irrelevant.  Therefore, the Report found that the Appellate
Division erred in assessing Wells's mental state at the time he
started heavily drinking, a course of conduct that led him to

---

[6]     Wells did not argue in his petition that the trial evidence
was insufficient to support his conviction under the Register
standard, nor does the Report consider this issue.

operate a car while inebriated, instead of at the time of the collision.  Second, the Report found that under the Feingold standard with the clarification provided by Valencia II, a rational fact finder could not convict Wells of the depraved indifference charges.

The respondent objects to this finding and argues that the Report reads Valencia II too broadly.  The respondent goes on to say that under the Feingold standard, whether or not Valencia II should be interpreted to modify it as the Report recommends, there is sufficient evidence for a rational fact finder to convict Wells of the depraved indifference charges.

A.   The New York Court of Appeals's Decision in
     Valencia II

Various Appellate Division opinions that followed Feingold demonstrate a split between the departments in reviewing homicide charges involving drunk driving.  In reviewing Wells's appeal, the First Department held that if Feingold were to apply, then evidence of his mens rea "at the time defendant made the conscious decision to embark on a course of conduct that inevitably resulted in his operation of a motor vehicle while in a state of extreme intoxication" would be relevant.  Wells, 862 N.Y.S.2d at 29.  At the time he started drinking, the First Department found, there was sufficient evidence to support a finding of a mental state of depraved indifference.  Id.  But,

30

the Second Department reached the opposite conclusion in another prosecution of a drunken driver, finding that "the defendant's state of mind when he started consuming alcohol was too temporally remote from his operation of the vehicle to support a conviction of depraved indifference assault."  People v. Valencia, 873 N.Y.S.2d 97, 98 (2d Dep't 2009) ("Valencia I").[7]

Of these Appellate Division decisions, leave to appeal by the New York Court of Appeals was granted in only one -- to the prosecution in Valencia I.  The resulting decision, Valencia II, is only three sentences long:

> The order of the Appellate Division, insofar as appealed from, should be affirmed.  There is insufficient evidence to support a conviction for depraved indifference assault.  The trial evidence established only that defendant was extremely intoxicated and did not establish that he acted with the culpable mental state of depraved indifference.

Valencia II, 14 N.Y.3d at 927-28.  In addition to this short unanimous opinion, there were also two concurrences.  In his concurrence, Judge Jones stated he had "to write separately to express [his] position on the necessity of a temporal connection between mens rea and actus reus in the context of depraved

---

[7]    The Third and Fourth Departments also issued opinions touching on this issue, taking a separate route in finding that intoxication could "negate" or make it impossible for one to possess a mental state of depraved indifference.  People v. Wimes, 856 N.Y.S.2d 332, 334 (4th Dep't 2008); People v. Coon, 823 N.Y.S.2d 566, 567 (3d Dep't 2006).

indifference offenses." Id. at 931.   Judge Jones felt the need
to write separately because he agreed with the result and
rationale of the Second Department's decision, as well as its
proposed rule to require a temporal connection between offense
and mens rea.   Id. at 931-34.   In Judge Graffeo's concurrence,
she stated that the Court of Appeals was affirming the decision
to overturn the defendant's depraved indifference conviction,
but that it did so "on narrower grounds" than the Second
Department, which had "conclude[ed] that defendant's state of
mind before he drove home was too remote in time from the car
crash."   Id. at 928.   Although she agreed that the evidence in
that case did not support a finding of a mens rea of depraved
indifference, Judge Graffeo clearly did not agree with the
Second Department's proposed temporal proximity rule, as she
wrote that "there is no social or penological purpose to be
served by a rule that permits one who voluntarily drinks to be
exonerated from failing to foresee the results of his conduct if
he is successful at getting drunk."   Id. at 929-30.   Her
concurrence underlined that the Court of Appeals's decision did
not resolve "whether the transformation of depraved indifference
into a subjective state of mind [by Feingold] precludes
intoxication as a defense to that mens rea."   Id. at 931.

Despite these clear signs that the holding in Valencia II was quite limited, the Report concluded that the Court of Appeals "settled the conflict" between the departments of the Appellate Division and "ma[de] clear that evidence of a defendant's conscious decision to drink despite the knowledge that he later plans to drive is insufficient to uphold a conviction for depraved indifference."[8]  This Opinion does not adopt the Report's recommendation to read Valencia II in such an expansive manner.  As the respondent accurately observed, "the decision by the Court of Appeals [in Valencia II] appears to have been designed to avoid pronouncing on any specific legal issues, including the issue of whether a strict temporal

---

[8]    The Report also suggests that the Court of Appeals had already articulated that temporal proximity between mens rea and actus reus was required when it stated in Jean Baptiste that "under Feingold, it is not the circumstances under which the homicide occurred that determines whether defendant is guilty of depraved indifference murder, but rather defendant's mental state at the time the crime occurred."  11 N.Y.3d at 542 (emphasis supplied).  This highlighted language is clearly dicta, however, as there was no suggestion in the circumstances of the offense in Jean-Baptiste that a determination needed to be made about the time frame relevant to an assessment of the defendant's mental state.  The phrase "at the time the crime occurred" should not be read to indicate a rule; rather, the import of the sentence is to emphasize that the defendant's mens rea, not objective circumstances of the offense, is an element of depraved indifference murder.

concurrence of <u>mens rea</u> and <u>actus reus</u> is required in drunk-driving depraved-indifference crimes."[9]

B.   Sufficiency of the Evidence Assuming an Expansive
     Interpretation of <u>Valencia II</u>

The respondent objects to the Report's finding for petitioner on the merits of his sufficiency claim because, even if the Report was correct to attribute this expansive interpretation to <u>Valencia II</u>, there was sufficient evidence at trial to convict Wells.  This Opinion now turns to the merits of the petition, first assuming, as the Report recommends, that <u>Valencia II</u> holds that "evidence of a defendant's conscious decision to drink despite the knowledge that he later plans to drive is insufficient to uphold a conviction for depraved indifference."

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review § 2254 petitions where the state court has reached the merits of the federal

---

[9]   Respondent does not challenge the Report's finding that <u>Valencia II</u> applies to Wells's conviction because it is a "clarification" of <u>Feingold</u> and does not articulate a new legal rule.  <u>See</u> <u>Fiore v. White</u>, 531 U.S. 225, 228-29 (2001).  There is no clear error in the Report's finding on this point. Therefore, in so far as <u>Valencia II</u> provides any clarification at all in its three short sentences, it is relevant to consider it in connection with this petition.

claim.  Habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (d)(2).  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. at § 2254(e)(1).  "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (citation omitted).

     "Under the Due Process Clause of the Fifth and Fourteenth Amendments, no conviction may be sustained except upon proof beyond reasonable doubt of every fact necessary to constitute the crime charged."  Henry, 578 F.3d at 137 (citation omitted). As a result, a habeas petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. (citation omitted). State law determines the elements of a state crime.  Id. at 138.

35

In reviewing the evidence supporting each element of the crime, the federal habeas court should not base its decision on its own opinion of whether it believes the evidence supports guilt, but rather whether the fact-finder acted rationally in convicting the petitioner.  Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984).  In doing so, the federal reviewing court "must credit every inference that could have been drawn in the State's favor, whether the evidence being viewed is direct or circumstantial." Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir. 1988).

Assuming that Feingold and the Report's interpretation of Valencia II applies to Wells, his convictions for depraved indifference murder and assault would need to be supported by evidence of his mental state of depraved indifference at the time of the vehicle collision, the required mens rea element. The Report argues that Wells's conviction violates his constitutional rights because the First Department only looked at his mental state "at the time [he] made the conscious decision to embark on a course of conduct that inevitably resulted in his operation of a motor vehicle while in a state of extreme intoxication."  Wells, 862 N.Y.S.2d at 29.  This finding ignores that the First Department looked also to evidence of mens rea at the time of the collision, holding that "[o]peration of a vehicle weighing in excess of two tons at a high rate of

36

speed on city streets while highly intoxicated is the very epitome of depraved indifference to human life," and that this conduct "demonstrates an utter disregard for the value of human life -- a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not."  Id. at 28 (citation omitted).

The evidence presented at trial is clearly sufficient for a reasonable fact finder to determine that Wells had a mens rea of depraved indifference at the time of the collision.  Some of the evidence indicates an extremely reckless mental state and awareness of his actions and their consequences.  Various witnesses testified that petitioner was driving very fast, in excess of fifty miles per hour, on Manhattan city streets.  Id. at 27-28.  Before the fatal collision, Wells hit a parked car, stopped momentarily, and drove through several red lights.  Id. at 22.  He also came very close to hitting another moving vehicle before hitting the one carrying the victims of the collision.  The driver of the car that had almost been struck yelled at Wells, to which he responded by "punching" the gas pedal and taking off again at high speed, failing to be chastened by this narrowly-avoided accident.  Id. at 21-22. Then, after the collision, the petitioner tried to leave the scene of the crash and struggled with those that restrained him

from fleeing, possibly demonstrating that he was aware of his actions and their consequences.[10]   Id. at 22.   The First Department found that his "attempt to flee" and "struggle with those who thwarted his escape" indicated that Wells was "not so impaired that he was unaware of what he had done."   Id. at 27. This evidence is sufficient to find that the First Department's decision to uphold Wells's conviction was not an unreasonable application of clearly established federal law, as the evidence was sufficient for a reasonable fact finder to determine that each of the elements of the crimes with which he was charged

---

[10]   This evidence distinguishes Wells's case from that of the defendant in Valencia.   The Valencia trial court found that the defendant had been "oblivious" to his actions as he drove under the influence of alcohol in the wrong direction on a highway. Valencia I, 873 N.Y.S.2d at 99.   There was no similar finding by the trial court here.   Unlike in this case, there was no evidence that the defendant in Valencia reacted to the actions of other drivers or exhibited conduct that could be construed as evidence of decisions by the defendant to stop and restart his intoxicated driving.   Furthermore, upon being confronted with his actions after he crashed into two vehicles, the defendant stated, "I don't know and I don't care."   Valencia II, 14 N.Y.3d at 871.   In contrast, the evidence here could be reasonably found to support a finding that Wells had at least some awareness of his actions and their consequences.   Therefore, despite some similarities, these cases are not so alike that a finding that sufficient evidence to support a depraved indifference mental state was presented in Wells's trial would be unreasonable.

were proved beyond a reasonable doubt, meeting the requirements of the Due Process Clause.

The Report points out that other witnesses testified that after the collision, Wells appeared incoherent, "out of it" and eventually lost consciousness.  Furthermore, Wells's blood alcohol level was quite high, measured at .25-.27% two hours after he had stopped drinking.  Although this is valid evidence that could be used to find that Wells's did not have a mens rea of depraved indifference, it is not such clear contrary evidence that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Due Process Clause.  Harrington, 131 S.Ct. at 786.  A reasonable fact finder could find that the remaining evidence was sufficient to support Wells's depraved indifference convictions.

C.   Sufficiency of the Evidence Assuming a Limited Holding
     in Valencia II

This Opinion, as mentioned above, does not adopt the portion of the Report that interprets Valencia II to require a temporal connection between the depraved indifference mens rea and the actus reus.[11]  Instead, Valencia II constitutes a limited holding by the New York Court of Appeals which does not articulate a rule about the interaction between intoxication and

---

[11]   The Report does not address whether there was sufficient evidence presented at trial to support Wells's conviction under a limited reading of Valencia II, but this Opinion does so here.

a mental state of depraved indifference or about the appropriate time to assess a defendant's mental state.  It is worth noting that the New York Court of Appeals denied Wells's appeal despite the fact that the First Department assessed, among other things, his mens rea at the time he was drinking.  Wells, 11 N.Y.3d 858. Therefore, under prevailing New York law, the mens rea requirement for Wells's depraved indifference convictions can be supported by evidence of his mental state not only at the time of the collision but also when he began drinking heavily earlier that night.

In addition to the evidence discussed above with regard to his mental state at the time of the crash, there was also evidence presented at trial from which a rational fact finder could determine that Wells possessed a mental state of depraved indifference when he began drinking heavily before the collision.  Wells had attended an "intoxicated driver rehabilitation course," which is evidence of his "comprehension of the dangers of drinking and driving" at the time he began drinking.  Wells, 862 N.Y.S.2d at 29.  He then consciously chose to drink in excess and then "to drive on city streets at a high rate of speed through red traffic lights."  Id.  As the First Department held, at the time Wells began drinking that night, he would have known that it was highly likely that the result would

40

be his operation of a vehicle while intoxicated in a densely
populated area.  Id.  This evidence was clearly sufficient for a
reasonable fact finder to convict Wells of depraved indifference
murder and assault under the current state of the law, governed
by the Feingold standard and informed by the narrow holding in
Valencia II.

IV.  Ability to Present a Defense

        Wells's second claim challenges his conviction on the
ground that he was denied his right to present a defense under
the Sixth and Fourteenth Amendments because the trial court
excluded expert psychologist testimony that he wished to
introduce.  The Report found that this evidence was properly
excluded by the trial court, and that the First Department
correctly affirmed this exclusion, because at trial Wells had
only sought to introduce the expert testimony in order to show
that he suffered from chronic alcoholism, which was not relevant
under either the Register or Feingold standard of depraved
indifference.  This Opinion adopts that portion of the Report.

        "The right to call witnesses in order to present a
meaningful defense at a criminal trial is a fundamental
constitutional right secured by both the Compulsory Process
Clause of the Sixth Amendment and the Due Process Clause of the
Fourteenth Amendment."  Howard v. Walker, 406 F.3d 114, 131 (2d

41

Cir. 2003) (citation omitted).  But this right "is not unqualified . . . .  Even relevant testimony can be excluded, depending upon circumstances, without offending due process." Lurie v. Wittner, 228 F.3d 113, 133 (2d Cir. 2000) (citation omitted).  "To establish a Sixth Amendment violation, a defendant must demonstrate that he was deprived of the opportunity to present a witness who would have provided testimony that was both material and favorable to his defense." Howard, 406 F.3d at 132 (citation omitted).

Wells claimed in his petition that the expert testimony was meant to provide evidence of both his chronic alcoholism and also "the impact of his intoxication" on his mental state.  As the Report noted, however, the trial record makes clear that Wells's trial attorney represented to the court that the expert witness would "establish that [Wells] was, at the time of the collision, a chronic alcoholic."  Similarly, the trial memorandum of law explained that the expert would provide evidence "to explain [Wells's] intoxication in the context of [his] illness."  There is nothing in the record to indicate that the psychologist's testimony was meant to provide further evidence to the jury about Wells's mental state either while he was drinking or at the time of the collision.  Indeed, a concurring opinion to the First Department's review of Wells's

appeal stated that Wells "never alerted the trial court to his current claim that the [expert psychologist's] testimony related to a depraved indifference <u>mens rea</u>." <u>Wells</u>, 862 N.Y.S.2d at 31.

In any event, the evidence of the petitioner's history of chronic alcoholism, which was the only evidence for which trial counsel purported to introduce the expert testimony, would have been irrelevant under either the <u>Register</u> or <u>Feingold</u> standard. New York "Penal Law § 15.05(3) expressly precludes evidence of intoxication as a defense to a reckless crime, providing that '[a] person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly.'" <u>Wells</u>, 862 N.Y.S.2d at 28.  As depraved indifference murder was a crime of recklessness under the <u>Register</u> standard, intoxication, and the history of chronic alcoholism, would have been inadmissible to provide evidence of Wells's <u>mens rea</u>.  <u>Register</u>, 60 N.Y.2d at 280.  Furthermore, intoxication could not be used to rebut evidence of objective circumstances indicating depraved indifference under the <u>Register</u> standard.  <u>Register</u>, 60 N.Y.2d at 279.

Under any application of <u>Feingold</u>, evidence of Wells's chronic alcoholism would not have been both material <u>and</u> favorable to his defense.  Such information is irrelevant to an

inquiry into Wells's mens rea at the time of the collision. Although such evidence might be relevant to determining his mens rea at the time Wells began to drink that night, it would tend to be unfavorable, as it would illuminate further Wells's comprehension of the dangers of drinking and driving.


CONCLUSION

The February 11, 2010 petition for a writ of habeas corpus is denied.  In addition, the Court declines to issue a certificate of appealability.  Because Wells cannot overcome his procedural default, or show that Feingold applies retroactively to his petition, he has not made a substantial showing of a denial of a federal right, and appellate review is not warranted.  Love v. McCray, 413 F.3d 192 (2d Cir. 2005).  The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court shall dismiss this petition and close the case.


SO ORDERED:

Dated:     New York, New York
           April 14, 2011

                        _____
                        DENISE COTE
                United States District Judge
                        44